253 A.2d 590.

BRIC'S MARKET, INC. *et al. vs.* STATE.
ESTATE OF J. EVERETT BENSON *et al. vs.* STATE.
BRIC'S MARKET, INC. *et al. vs.* ESTATE OF
J. EVERETT BENSON *et al.*

MAY 22, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. These are three civil actions brought in the superior court. Two were brought pursuant to the provisions of G. L. 1956, §37-6-18, for the assessment of damages by a jury resulting from the taking of land by the state of Rhode Island under its power of eminent domain. The first of such statutory actions was brought by Bric's Market, Inc. and others against the state of Rhode Island for the assessment of damages resulting from the taking of their leasehold interest in property owned by the estate of J. Everett Benson and located on Bellevue Avenue in the city of Newport. Reference will be made to this case hereafter by its superior court number M.P. 67-14. The second action under the statute was brought by the estate of J. Everett Benson and others against the state of Rhode

Island for the assessment of damages to their fee interest in the property hereinbefore mentioned to be taken by eminent domain and will hereinafter be referred to by its superior court number M.P. 68-2.

The third of these actions was brought by Bric's Market, Inc. and others against the estate of J. Everett Benson and others on an alleged agreement on the part of the defendants to pay the plaintiffs the sum of $4,200 in settlement of their claim for damages resulting from the condemnation referred to above. This third case will also be hereinafter referred to by its superior court number C.A. 68-31. Shortly after 68-31 was instituted, the two petitions brought under the statute for the assessment of damages, 67-14 and 68-2, were consolidated for hearing, while at the same time a motion of Bric's Market, Inc. to consolidate all three actions was denied.

On May 15, 1968, at the direction of a justice of the superior court, a pretrial conference was held in open court, at which a stenographic record was kept. It appears from that record that the court expressed an opinion that two of the three matters could be settled that day. It further appears that counsel representing the state informed the court that the fair market value of the property as of the date of the taking, including the leasehold interest, was $68,000. Counsel for Benson's estate agreed that this figure represented the fair market value of both the fee and the leasehold interest. There then followed a colloquy between counsel for Bric's Market and the court as to whether counsel would agree that the over-all value of the entire property was $68,000. To this inquiry on the part of the court, counsel for Bric's Market replied: "We don't object to that. I don't know how we can approve it. It coincides with our figures of the leasehold." The court again inquired whether counsel objected to that figure, and counsel responded: "I can say it coincides with the values of

the leasehold." The court at this point, without further discussion, found that "* * * the fair market value of the property on the date of condemnation was Sixty-eight Thousand Dollars."

The court then went on to inquire of counsel for Bric's Market what, in his opinion, was the fair market value of the leasehold interest as of the date of the taking. Counsel replied that the value of the leasehold had been appraised at $8,100, and the court then inquired of counsel for the estate of Benson whether they agreed with this appraised value of the leasehold interest. Counsel responded that they did not agree with such valuation. The court then stated: "This doesn't actually involve the State, because the State is willing to pay Sixty-eight thousand Dollars. This is a fight between the parties." The court then directed counsel for the state to prepare an order or decree pursuant to the instructions that he proceeded to issue.

On July 3, 1968, the court entered an order, in which it found that the fair market value of the property, including all interest therein, was $68,000. The court directed that from this $68,000 the state of Rhode Island was to deduct all unpaid encumbrances and liens on the property and to pay them directly. The order then provides: "4. From the remaining balance the State of Rhode Island is to deposit in the Registry of the Superior Court for Newport County to be held pending final adjudication of the amount to be paid over to the plaintiffs in civil action number 68-31 and M.P. 67-14. This last said sum of money shall be available to said plaintiffs for any judgment that may be obtained by them in said cases. 5. The balance remaining after the deposit of $10,000.00 shall be paid by the State of Rhode Island to the plaintiffs in Case No. 68-2. 6. Upon payments by the State of Rhode Island as above provided, it shall be discharged of all its obligations in full under Cases No. 67-14 and 68-2, including any obligation to pay any

interest from and after the date hereof." From this order appellants appealed to this court.

The appellants contend that the order entered by the court does not conform to the decision made by the court and was in fact entered without notice to appellants. They contend further that the order was improper in that it is contrary to a statutory procedure for making partial payment of claims in condemnation cases, referring in this respect to §37-6-17, as amended. Lastly, they contend that the trial court erred in reaching its decision in that it denied appellants' right to the full trial on the issue of the value of the leasehold provided for in §37-6-18.

The appellants' contentions, in our opinion, could give rise to at least two substantial questions of law: first, the extent to which rule 16 of the rules of civil procedure of the superior court confers authority upon that court to enter dispositive orders in the course of a pretrial procedure and, second, whether the provisions of §37-6-17, as amended, contemplate exclusion of alternate methods of providing for a partial payment of damages for the taking of property by eminent domain. These issues, and subsidiary questions that might arise thereunder, if raised in appropriate circumstances, ought to be determined by this court. We are unable to conclude, however, that the circumstances in which these issues are raised in the instant cases are sufficient to warrant the court in taking such action.

An examination of the record, including the reasoning of the court in reaching its decision and the contents of the order thereafter entered by the court, discloses, as appellants contend, a substantial inconsistency between the contents of the order entered and the instructions that the court gave to counsel relative to the preparation of that order. The appellants, as we understand them, are calling upon this court to hold that the inconsistency between the order and the instructions constitutes reversible error.

However, it is too well settled to require any citation of authority that an appeal in statutory proceedings such as these brings to this court for review the judgment, order, or decree entered by the subordinate tribunal and, that order being free from error, the fact that it was based upon erroneous reasoning has no effect upon its validity. In short, this court will sustain an order or judgment that is correct even though the reasoning upon which it rests was faulty. But where an order itself is ambiguous or obscure in its terms, reference will be made to the oral decision in order to cast light upon the meaning of that order. In the instant case, however, an examination of the oral decision serves only to further confuse the quest to determine the ends which the court intended to accomplish. In such circumstances, to attempt to ascertain the rationale upon which these discrepancies are based would require an exercise of clairvoyant power which this court, in all modesty, concedes that it does not possess.

It is our further opinion that the order entered by the trial justice after the pretrial procedure effected no change in the basic issues to be tried in these cases, apart perhaps from the provisions of the order directing that the sum of $10,000 be deposited in the registry of the superior court. The issues to be tried in these cases were no different after entry of the order than they were on May 15, 1968, the time of the beginning of the pretrial hearing. In these circumstances, it is our opinion that the ends of justice will best be served, or at least no injustice will result, if the pretrial procedure engaged in in these cases is stricken from the record and the cases revert to the status in which they stood on May 15, 1968.

The appeals of the appellants are sustained, the order appealed from is quashed, and the cases are remitted to the superior court for further proceedings.

*Moore, Virgadamo, Boyle & Lynch, Francis J. Boyle,* for appellants, Bric's Market, Inc. et al.

*Corcoran, Peckham & Hayes, Patrick O'N Hayes, Joseph T. Houlihan,* for appellees, Estate of J. Everett Benson et al. *Alexander G. Teitz,* Office of Special Counsel, for the State of Rhode Island.