349 So.2d 1153 (1977)
Margaret Talley DOWNEY, etc.
v.
BITUMINOUS CASUALTY CORPORATION et al.
SC 2530.
Supreme Court of Alabama.
September 9, 1977.
R. Ben Hogan, III, Birmingham, Robert H. King, Gadsden, and Hogan, Smith & Alspaugh, Birmingham, for appellant.
Roger C. Suttle of Inzer, Suttle, Swann & Stivender, Gadsden, for appellees.
EMBRY, Justice.
Appellant, Margaret Talley Downey, brought this action in her own behalf as the dependent widow of Emmett Downey and for the benefit of his three dependent minor children. She sought recovery of benefits provided in lieu of workmen's compensation benefits by the terms of an insurance policy issued by appellee Bituminous Casualty Corporation to State of AlabamaHighway Department. That department had leased Downey, a convict, from the Board of Corrections, State of Alabama. While working with a road crew of the Highway Department he met his death as the result of an accident. The Department was housing Downey and paying the Board for his use, at the time.
Appellants, the Downeys, make three statements of what they perceive to be the issues presented for review by this court. The third one is controlling.
"3. Did the Trial Court err in failing to find from the stipulated facts as a matter of law and policy that State prisoners working on road crews under the supervision of the Alabama Highway Department are employees of the Department within the meaning of the insurance coverage that provides benefits for the death or disability to the employees of the Alabama Highway Department?"
We hold that the trial court did not err and will affirm.
The Downeys contend that Mr. Downey was an employee of the Highway Department *1154 within the meaning of the Alabama workmen's compensation laws and they are entitled to benefits on account of his death under the terms of the policy which required Bituminous:
"To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law."
They say that, although there is no Alabama case interpreting our insurance law or comp act as it applies to leased convicts under the facts of this case, the better rule of law is that, where the convict is housed and supervised by the Highway Department, the widow and minor children should receive death benefits afforded beneficiaries of any other Highway Department employee killed in the course of his employment by accidental means.
Primarily, two cases are relied upon to support the Downeys' contention; Johnson v. Industrial Commission, 88 Ariz. 354, 356 P.2d 1021; and Pruitt v. Workmen's Compensation Appeals Board of the State of California, 261 Cal.App.2d 546, 68 Cal.Rptr. 12.
In Johnson, the Arizona court stated:
"This case presents the single question of whether a county prisoner, injured while on loan to a private corporation, is an employee within the meaning of the Workmen's Compensation Act of Arizona, and therefore entitled to compensation for injuries sustained during the time he was so employed."
In holding the corporation, Yuma County Fair, Inc., was the employer and Johnson the employee, it was stated:
"Although petitioner was under duress in that he was a prisoner of Yuma County, there is nothing in this record to indicate that the actual services of these eight prisoners for the Yuma County Fair, Inc. was compulsory. As an additional inducement they were each given three-days credit for each day's work and seemingly were free to choose whether they worked or not. All the essentials of a contract for hire were present. Consideration flowed from the employer by way of different food and lodging, perhaps better, and sundries and cigarettes. Petitioner evidenced his agreement to the arrangement by performing the work tendered."
Although there are other distinctions between this case and Johnson, the fact that Johnson's services for Yuma County Fair was voluntary is a significant one. One of Bituminous' principal arguments is that Downey was not an employee because his services to the Highway Department were not voluntary. Obviously, the other distinction between Johnson and this case is the fact that Yuma County Fair was a private corporation.
In Pruitt, a county inmate was farmed out to Nevada City to work on its sewer plant. He was held to be a city employee for workmen's compensation purposes where he did such work voluntarily in return for credit on the sentence served, interlude release from jail confinement, and a carton of cigarettes per week. The distinction between Pruitt and this case may be found in that portion of the opinion of the California court where it states:
"We hold that when a county jail inmate is loaned out to a third party for work on a voluntary basis, whether that third party be a private corporation or a municipality, and when he is under the control of the latter with the right in said third party to direct the manner in which the service shall be performed, there is (1) a relationship of master and servant, (2) an implied contract of hire and therefore by statutory definition (in Lab. Code, § 3351) the inmate becomes an `employee' and as such entitled to workmen's compensation benefits when injured in the course and scope of his employment. That is true notwithstanding that monetary consideration passing to the prisoner be nil and the other consideration from the direct beneficiary of the services *1155 (here a carton of cigarettes) be of nominal value. This court has held that payment of monetary wages is not a sine qua non of employment under workmen's compensation law. * * * Concededly, the principal consideration passing to petitioner was his credit on sentence time served plus an interlude release from jail confinement. That which the inmateservant received may not have been great from the viewpoint of some, but that which he gave in return was considerable.
The section of the California Labor Code, defining an employee for workmen's compensation purposes, mentioned in the quoted statement provides:
"* * * [E]very person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully employed * * *."
In this case, as did the Arizona court in Johnson and the California court in Pruitt, we deal largely with the interpretation of statutes. We are bound, in comp cases, by statutory definitions of the words employer and employee. Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74 (1933). The words employer and employee are both defined in our Workmen's Compensation Act. Title 26, § 262(d), Code, defines the term employer as:
"* * * every person not excluded by section 263 of this title who employs another to perform a service for hire and to whom the `employer' directly pays wages, and shall include any person or corporation, copartnership, or association, or group thereof, and shall, if the employer is insured, include his insurer, as far as applicable, and shall not include one who regularly employs a number less than four in any business * * *"
Title 26, § 262(h) defines employee or workman as:
"* * * Every person, not excluded by Section 263 of this title in the service of another under any contract of hire, express or implied, oral or written * * *"
One of the essentials of the relation of employee and employer is the voluntary rendition of service by the employee. Reed v. Ridout's Ambulance, Inc., 212 Ala. 428, 102 So. 906 (1925). Under our comp act there must be a contract of hire, express or implied, or written. Tit. 26, § 262(h). The person rendering the services must be paid wages directly by the employer. Tit. 26, § 262(d).
In this case, unlike in Johnson and Pruitt, Downey was not performing work voluntarily; rather he was working under sentence after conviction for a felony. He was performing forced labor while leased to the custody of the Highway Department of the State by the Board of Corrections of the State. And finally, but significantly, he was not one to whom the employer directly paid wages; a statutory requirement. For these reasons the judgment is due to be affirmed.
We would like to note the excellence of briefs of both counsel in this case as well as their reasoned and logical oral arguments. The issues were presented clearly and greatly facilitated our decision.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, FAULKNER, ALMON and BEATTY, JJ., concur.
MADDOX, J., concurs in result.
JONES and SHORES, JJ., dissent.
JONES, Justice (dissenting):
I respectfully dissent. It seems to me that, under any reasonably conceivable test of the employer/employee relationship, Emmett Downey was an employee of the State Highway Department at the time of his death. The majority concludes from the record (stipulation of facts) that Downey's employment was not voluntary. This is a totally unwarranted conclusion. To be *1156 sure, his confinement as a convict was involuntary, but not his employment. Once the lease arrangement was effected between the Board of Corrections and the Highway Department, and once Downey commenced his work activities under the direction of the Highway Department, he was an employee to the same extent and to the same degree as any private citizen hiring his services as a laborer with the department; and, upon meeting with the work-related accident, though just a convict, he is just as dead.
On a relative scale, the second rationale employed by the majority is even more unfortunate. The literal reading of the statutory language "to whom the `employer' directly pays wages," misses the obvious purpose and intent of this definition. Clearly, this was intended to distinguish between a personal contract of employment and the independent contractor arrangement. One example of this distinction is Manpower, Inc. This firm contracts to perform labor and services for others through its own employeespays its own wages, and maintains its own workmen's compensation coverage. Under this arrangement, the statutory definition exempts the "employer" from the operative effect of the Workmen's Compensation Act. To use this definition to abort the employer/employee relationship between Downey and the Highway Department, in my opinion, is a distortion never contemplated nor intended by the drafters of the Act.
SHORES, J., concurs.